## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, PRUCO
SECURITIES, L.L.C., and
PRUDENTIAL INSURANCE
AGENCY, L.L.C.,

      Plaintiffs,

vs.

DOUGLAS E. INLAY,

      Defendant

No. C 10-4072-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFFS'
MOTION FOR TEMPORARY
RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND
EXPEDITED DISCOVERY**

———————————

On July 26, 2010, The Prudential Insurance Company of America, Pruco Securities, L.L.C., and Prudential Insurance Agency, L.L.C (collectively Prudential)[1] filed a Complaint (docket no. 1) seeking primarily injunctive relief against a former "affiliate," defendant Douglas E. Inlay, pending an arbitration action that Prudential contemporaneously commenced against Inlay before the Financial Industry Regulatory

---

[1] The Prudential Insurance Company of America alleges that it is New Jersey corporation that provides a broad spectrum of insurance and financial services to millions of clients around the globe. Plaintiff Pruco alleges that it is a wholly-owned subsidiary of Prudential Insurance, a New Jersey limited liability company, and a national broker-dealer and a member of FINRA that provides financial planning and other securities services to its clients. Neither the Complaint nor the Amended Complaint contains any allegations further identifying or describing plaintiff Prudential Insurance Agency, L.L.C.

Authority (FINRA) Dispute Resolution, Inc. In that Complaint, Prudential asserts that prior to and after Inlay's termination on July 1, 2010, Inlay retained confidential client files and other confidential business information, including a prospective list of potential customers, provided some or all of that information to his new employer, Agency One Insurance, in David City, Nebraska, and or used some of that information to solicit clients of Prudential to terminate policies or investments with Prudential and to replace them with policies or investments provided by Inlay's new employer. Prudential alleges that Inlay was sending the confidential and proprietary documents and information in a purposeful scheme to leave Prudential for Agency One and to solicit the clients he served at Prudential to cancel their current policies and replace them with MetLife policies through Agency One. Prudential asserts claims against Inlay for (1) breach of contract, based on alleged breach of confidentiality and non-competition agreements, (2) misappropriation of trade secrets, (3) breach of fiduciary duty, (4) breach of duty of loyalty, (5) intentional interference with actual and prospective economic advantages, (6) negligent interference with actual and prospective economic advantages, (7) conversion, and (8) unfair competition. The Complaint seeks a "temporary and preliminary injunction" in aid of arbitration. Prudential filed an Amended Complaint (docket no. 17) on July 28, 2010, asserting the same claims based on the same allegations, but modifying the prayer for relief.

On July 26, 2010, Prudential also filed the Motion For Temporary Restraining Order And Preliminary Injunction And Motion For Expedited Discovery (Motion For TRO) (docket no. 4). In its Motion For TRO, Prudential alleges, *inter alia*, that, as a result of Inlay's wrongful conversion and misappropriation of Prudential's confidential and proprietary business and customer information, and Inlay's improper solicitation of Prudential's clients, Prudential has been and will continue to be irreparably harmed by the

2

disclosure of its trade secrets and customer lists, the loss of its good will and business reputation, and the loss of revenue that is impossible to ascertain at this time. Prudential alleges that its action in this court for a temporary restraining order or preliminary injunction is authorized by Rule 13804 of the Code of Arbitration Procedure for Industry Disputes for FINRA (FINRA Arbitration Rule 13804) pending its arbitration action for permanent injunctive relief. Indeed, Prudential argues that this is the only avenue available to prevent further misappropriation of Prudential's trade secrets and irreparable harm to Prudential's business, pending arbitration of its claims against Inlay. Prudential also filed an Amended Motion For Temporary Restraining Order And Preliminary Injunction And Motion For Expedited Discovery (Amended Motion For TRO) (docket no. 18) on July 28, 2010, again modifying the specific relief requested.

The court held a hearing on Prudential's Motion For TRO, as amended, on July 28, 2010. In the order setting the hearing, the court directed counsel for Prudential to serve the order on the defendant and any known counsel for the defendant and to provide proof of such service prior to the hearing. Prudential filed a Certificate Of Service (docket no. 15) on July 27, 2010, showing personal service on defendant Inlay of the court's order setting the hearing on the Motion For TRO. At the request of defense counsel, the hearing was delayed until later on July 28, 2010, to allow defense counsel some time to prepare. At the hearing, Prudential was represented by Leonard Weintraub of Paduano & Weintraub, L.L.P., in New York, New York, and Daniel B. Shuck of the Shuck Law Firm in Sioux City, Iowa. Dewey Sloan, Jr., appeared for defendant Inlay.

FINRA Arbitration Rule 13804 provides, *inter alia*, "Parties to a pending arbitration may seek *a temporary injunctive order* from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph, provided that an arbitration hearing on a request for permanent

3

injunctive relief pursuant to paragraph (b) of this rule has not yet begun." FINRA Arbitration Rule 13804(a)(1) (emphasis added). Rule 65 of the Federal Rules of Civil Procedure provides for "temporary restraining orders" and "preliminary injunctions," but not for "temporary injunctive orders." Various courts have explicitly or implicitly construed preliminary injunctions, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to be "temporary injunctive orders" within the meaning of FINRA Arbitration Rule 13804. *See, e.g., Merrill Lynch v. Murvin*, 2009 WL 528605, *1 (M.D. Fla. March 2, 2009) (slip op.) (explicitly construing "temporary injunctive order" to include a "preliminary injunction"); *Morgan Stanley & Co., Inc. v. Choy*, 2009 WL 330210, *3-*4 (D. Hawaii Feb. 10, 2009) (slip op.) (implicitly finding a "preliminary injunction" was authorized by Rule 13804); *Bank of America, N.A. v. Lee*, 2008 WL 4351348, *1 (C.D. Cal. Sept. 22, 2008) (implicitly finding Rule 13804 authorized either a "temporary restraining order" or a "preliminary injunction," denying an ex parte application for a temporary restraining order, but ordering the parties to show cause why a preliminary injunction should not issue). Nevertheless, this court does not believe that the FINRA Arbitration Rule 13804 should be construed to authorize a "preliminary injunction" within the meaning of Rule 65 of the Federal Rules of Civil Procedure.

Specifically, in prior rulings, this court has discussed in some detail the differences between a temporary restraining order and a preliminary injunction. *See McLeodUSA Telecommc'ns Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 n.1 (N.D. Iowa 2005); *Branstad v. Glickman*, 118 F. Supp. 2d 925, 935-37 (N.D. Iowa 2000). Suffice it to say that, in those decisions, this court found that the following factors should be considered to distinguish a TRO from a preliminary injunction: (1) whether the hearing was *ex parte* or adversarial; (2) whether the adversarial hearing allowed the basis for the relief requested to be strongly challenged; (3) whether the order expired, by its own terms,

4

within the ten days (now fourteen days) provided by Rule 65(b); and (4) the "substance" of the order. *Id.*; *Branstad*, 118 F. Supp. 2d at 935-37. This court now notes, further, that, while a "temporary restraining order" is "temporary" in the sense that it expires after a specified time, a "preliminary injunction" may not be "temporary" in any sense, as it may last for an unlimited time prior to entry of permanent injunctive relief or until it is dissolved. *See* FED. R. CIV. P. 65. Where FINRA Arbitration Rule 13804 specifically uses the term "temporary" for the narrow relief that a court may provide pending arbitration proceedings, a "temporary restraining order" most nearly fits the language and intent of Rule 13804. If the FINRA rule had been intended to authorize more than just a temporary restraining order, it easily could have used the word "preliminary" or "non-final" in addition to the word "temporary," or a host of other words and phrases, to express an intent that the relief be for longer than the time allowed under a temporary restraining order pursuant to Rule 65. Moreover, Rule 13804 provides, "If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order." FINRA Arbitration Rule 13804(b)(1). This fifteen-day period to commence the arbitration proceedings dovetails with the fourteen-day period for which a temporary restraining order under Rule 65 may last. *See* FED. R. CIV. P. 65(b)(2). Thus, this court reads the "temporary injunctive order" language in Rule 13804 to authorize only a "temporary restraining order" by this federal court pursuant to Rule 65, not a "preliminary injunction."

Moreover, even if Rule 13804 authorizes an action in a court for a "preliminary injunction," this court will not issue a "preliminary injunction" under the circumstances presented here. The court held an "adversarial" rather than an *ex parte* hearing with the parties, because the court is reluctant to grant even a temporary restraining order *ex parte*,

5

but the court did not hold the sort of "adversarial hearing," including presentation of evidence beyond the affidavits and exhibits filed with Prudential's Complaint and Motion For TRO [and any response by Inlay?], that would have allowed the basis for the requested order to be "strongly challenged," such that it would be "'particularly unjustified'" to classify the resulting order as a temporary restraining order. *See McLeodUSA*, 361 F. Supp. 2d at 918 n.1 (quoting *Branstad*, 118 F. Supp. 2d at 936, in turn quoting *Sampson v. Murray,* 415 U.S. 61, 87 (1974)). Moreover, the court has every intention that, if injunctive relief is granted at this time, such relief will expire in fourteen days or after an extension for a like period. *Id.* (citing Fed. R. Civ. P. 65(b)). Finally, the "substance" of this order is intended to be a ruling on a request for a temporary restraining order, rather than a ruling on a motion for a preliminary injunction, not least because of the expedited nature of the proceedings and ruling and the limited nature of any relief that will be granted. *Id.* (citing *Baker Elec. Coop. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir. 1994)).

As this court has explained in past cases, it is well-settled in this circuit that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors, which were set forth in the seminal decision in *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). *See Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1031 (N.D. Iowa 2008); *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 954-55 (N.D. Iowa 2006); *McLeodUSA Telecommc'ns Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 918 (N.D. Iowa 2005); *Doctor John's, Inc. v. City of Sioux City, Iowa,* 305 F. Supp. 2d 1022, 1033-34 (N.D. Iowa 2004); *Branstad v. Glickman*, 118 F. Supp. 2d 925, 937 (N.D. Iowa 2000); *Uncle B's Bakery, Inc. v. O'Rourke,* 920 F. Supp. 1405, 1411 (N.D. Iowa 1996); *accord Straights and Gays for Equality v. Osseo Area Sch. Dist.*, 471 F.3d 908, 911 (8th Cir. 2006) (same factors); *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (same

6

factors). The so-called "*Dataphase* factors" that courts must weigh to decide whether or not to grant a temporary restraining order or preliminary injunction are the following: (1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm or injury to the movant absent the injunction, (3) the balance between the harm to the movant and the harm that the injunction's issuance would inflict on other interested parties, and (4) the public interest. *Dataphase,* 640 F.2d at 114; *accord Stanton*, 571 F. Supp. 2d at 1032; *Interbake Foods, L.L.C.*, 461 F. Supp. 2d at 955; *Doctor John's, Inc.,* 305 F. Supp. 2d at 1033; *Branstad I,* 118 F. Supp. 2d at 937 (quoting similar factors from *Entergy, Ark., Inc. v. Nebraska,* 210 F.3d 887, 898 (8th Cir. 2000)); FED. R. CIV. P. 65(b)(1).

The burden is on the movant to establish that injunctive relief is appropriate. *Lankford*, 451 F.3d at 503; *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994); *Modern Computer Sys., Inc., v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*). "'No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.'" *Baker Elec. Co-op.*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (citing *Dataphase*)); *accord Lankford*, 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*); *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir. 1999) ("These factors are not a rigid formula."). "'A district court has broad discretion when ruling on requests for preliminary injunctions, and [the appellate court] will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion.'" *Entergy, Ark., Inc.,* 210 F.3d at 898 (quoting *United Indus. Corp,* 140 F.3d at 1179); *accord Lankford*, 451 F.3d at 503. This court assumes that it has the

same discretion in deciding whether or not to grant a temporary restraining order. The court abuses its discretion "where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Lankford*, 451 F.3d at 503-04.

As a matter of completeness, the court will consider, at least briefly, each of the four "*Dataphase* factors." *See Lankford*, 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*, 28 F.3d at 1472). In making any findings of fact in doing so, however, the court is mindful of the general rule that "the findings of fact and conclusions of law made by a court granting a preliminary injunction [or temporary restraining order] are not binding at trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981); *accord United States Sec. and Exchange Comm'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) ("[W]e have long held that 'findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding.'") (quoting *Patterson v. Masem*, 774 F.2d 251, 254 (8th Cir. 1985)); *National Credit Union Admin. Bd. v. Johnson,* 133 F.3d 1097, 1103 n. 5 (8th Cir. 1998) (quoting this principle from *Camenisch*); *Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958, 962 (8th Cir. 1995) (citing this statement from *Camenisch* as the "general rule" for findings of fact and conclusions of law in preliminary injunction rulings). For the same reason, they should not be binding in any subsequent arbitration proceedings. Thus, all findings of fact in this ruling are provisional.

The first "*Dataphase* factor" is the likelihood or probability of success on the merits. *Dataphase*, 640 F.2d at 114. Likelihood of success on the merits requires that the movant find support for its position in governing law. *See, e.g., Baker Elec. Co-op.*, 28 F.3d at 1473-74 (Indian tribe's sovereignty to regulate electrical services); *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994) (first amendment and prior

8

restraint of expression); *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556-58 (8th Cir. 1993) (Indian tribe's regulatory authority and authority of states to regulate activities on tribal lands); *Aziz v. Moore*, 8 F.3d 13, 15 (8th Cir. 1993) (denial of injunctive relief was proper because federal courts "must abstain from imposing injunctions on prison officials [in an action under 42 U.S.C. § 1983 action] 'in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief,'" quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). As the Eighth Circuit Court of Appeals has explained,

> [A]t the early stage of a preliminary injunction motion, the speculative nature of this particular ['likelihood of success'] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.

*United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1179 (8th Cir. 1998) (internal citations and quotation marks omitted). Thus, the court is not deciding whether the movant for a preliminary injunction or a temporary restraining order will ultimately win. *Heather K. v. City of Mallard,* 887 F. Supp. 1249, 1258 (citing *Glenwood Bridge, Inc. v. City of Minneapolis,* 940 F.2d 367, 371 (8th Cir. 1991)).

Here, whether the court applies Iowa law or New Jersey law to Prudential's contract claim, Prudential has sufficient likelihood of success on the merits of that claim to justify a temporary restraining order. As Prudential points out, Inlay was a party to a Liberty Mutual Authorized Agent Agreement, McGuire Declaration, Exhibit E, a Statutory Agent Agreement, *id.*, Exhibit F, and a Field Manager Agreement, *id.*, Exhibit G, and in both the Authorized Agent Agreement and the Statutory Agent Agreement, Inlay expressly

9

consented to the imposition of a temporary restraining order to prevent him from breaching his obligations to Prudential. Perhaps more importantly, each of these contracts imposed upon Inlay an obligation to maintain confidentiality of all confidential and proprietary information and prohibited Inlay from soliciting business from any Prudential clients that he serviced while at Prudential, and the affidavits submitted by Prudential are sufficient to make a preliminary showing that Inlay is breaching those obligations. Similarly, the affidavits submitted by Prudential are sufficient to make a preliminary showing that Inlay is misappropriating trade secrets within the meaning of the Iowa Trade Secrets Act, where the affidavits point to circumstantial evidence that Inlay has misappropriated trade secret material by the improper means of stealing or failing to return files and client lists and sending such documents to his new employer. *See Stanton*, 571 F. Supp. 2d at 1041-44 (elements of a misappropriate of trade secrets claim under the Iowa statute).

The second "*Dataphase* factor" is the threat of irreparable harm to the movant absent the injunction. *Dataphase,* 640 F.2d at 114. In this circuit, "a party moving for a preliminary injunction [or a temporary restraining order] is required to show the threat of irreparable harm," *Baker Elec. Co-op.*, 28 F.3d at 1472 (citing *Modern Computer Sys.*, 871 F.2d at 738, and *Dataphase*), and the lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction or temporary restraining order. *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) (citing *Modern Computer Sys.*, 871 F.2d at 738). Stated differently, "[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury." *Glenwood Bridge*, 940 F.2d at 371 (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)). More specifically, the Eighth Circuit Court of Appeals has held that

> the movant's failure to sustain its burden of proving irreparable harm ends the inquiry "and the denial of the

10

> injunctive request is warranted." [*Gelco*, 811 F.2d] at 420.
> *Accord Modern Computer Sys.*, 871 F.2d at 738; *Dataphase*,
> 640 F.2d at 114 n.9. We must inquire, then, whether [the
> movant] has met its burden of proving that it will suffer
> irreparable harm absent a preliminary injunction.

*Id.* The Eighth Circuit Court of Appeals has also explained,

> "[T]he basis of injunctive relief in the federal courts has
> always been irreparable harm and inadequacy of legal
> remedies." *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500,
> 506-07 (1959). Thus, to warrant a preliminary injunction, the
> moving party must demonstrate a sufficient threat of
> irreparable harm. *See Adam-Mellang v. Apartment Search,
> Inc.,* 96 F.3d 297, 299 (8th Cir. 1996).

*Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir. 1999); *see Baker Elec. Co-op.,* 28 F.3d at 1472 ("No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance, they weigh towards granting the injunction. However, a party moving for a preliminary injunction is required to show the threat of irreparable harm.") (internal quotation marks and citations omitted).

Sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.*, 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction or temporary restraining order will not issue. *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir. 1992) (but finding in that case that the district court's conclusion that there was an adequate remedy was based on an erroneous legal premise, and requiring a proper balance of *Dataphase* factors). Here, the affidavits submitted by Prudential are sufficient to show irreparable harm for purposes of issuance of a temporary restraining order, because they show that Prudential has no adequate remedy at law. As Prudential notes, in *Stanton*, this court held that "where, as

11

here, the covenants at issue are non-disclosure covenants and a specific kind of non-competition covenant, a non-solicitation covenant, the mere violation of such a covenant also suffices to show irreparable harm, because violation of such covenants involves much the same threat to goodwill and business relationships with customers as violation of a covenant not to compete." *Stanton*, 571 F. Supp. 2d at 1046.

The third "*Dataphase* factor" is the "balance of harms." *See Dataphase,* 640 F.2d at 114 (the third factor is the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties). The "balance of harms" analysis is not identical to the "irreparable harm" analysis. *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir. 1994). Irreparable harm focuses on the harm or potential harm to the movant of the opposing party's conduct or threatened conduct. *Dataphase*, 640 F.2d at 114. In contrast, the balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public. *Id.*; *see also Glenwood Bridge*, 940 F.2d at 372 (considering the effect of granting or denying the injunction on the public's interest in a public works construction project as well as upon the parties in the balance of harm analysis); *Modern Computer Sys.*, 871 F.2d at 737-38 (harm to other interested parties also considered).

In conducting the "balance of harms" analysis required under *Dataphase*, it is obvious that an illusory harm to the movant will not outweigh any actual harm to the non-movant. *Frank B. Hall*, 974 F.2d at 1023. To determine what must be weighed, the court finds that courts of this circuit have looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op.*, 28 F.3d at 1473. Also, the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is relevant. *Id.* Another consideration

12

CRITICAL

in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action. *Sanborn Mfg.*, 997 F.2d at 489. Where the non-movant has taken such action, the balance of harms is readjusted, because the potential for economic or other harm to the movant has been eliminated. *Id.* (citing *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 774 (2d Cir. 1984), which held that injunctive relief was "wholly unnecessary" when the defendant had voluntarily brought his product labeled with the UL mark into compliance with UL standards and where there was not a likelihood of repetition or hazard to the public). Similarly, present harm as the result of past misconduct is not sufficient to justify the injury to the non-movant of granting a preliminary injunction requiring some additional corrective action, because such relief "goes beyond the purpose of a preliminary injunction." *Id.* at 490.

Here, the balance of harms also strongly favors Prudential. As noted above, Prudential faces the potential of irreparable harm, not some illusory harm, *Frank B. Hall*, 974 F.2d at 1023, if a temporary restraining order does not issue. This threat of harm strongly outweighs any potential harm to Inlay of restricting his ability, during the brief lifetime of a temporary restraining order, from using information that it appears he should not be able to use at all for the two-year period of the non-solicitation covenants. *Dataphase*, 640 F.2d at 114 (balance of harms considers the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public).

Finally, the last "*Dataphase* factor," which considers "the public interest," *see Branstad I*, 118 F. Supp. 2d at 943; *see also Pottgen*, 40 F.3d at 929; *Dataphase,* 640 F.2d at 114, also favors issuance of a temporary restraining order in this case. The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. *Id.* However, there are more

13

concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve, a preference for enjoining inequitable conduct, and the public's interest in minimizing unnecessary costs to be met from public coffers. *B & D I*, 231 F. Supp. 2d at 912 (citations and quotation marks omitted). As Prudential points out, trade secrets laws are founded on public policies that favor maintenance of standards of commercial ethics and "'[t]he necessity of good faith and honest, fair dealing, is the very life and spirit of the commercial world.'" *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974) (quoting *National Tube Co. v. Eastern Tube Co.*, 3 Ohio Cir. Cr. R., N.S. at 462); *see also Interbake Foods*, 461 F. Supp. 2d at 978 (finding the public interest embodied and articulated in the Iowa Trade Secrets Act sufficient to warrant a preliminary injunction aimed at protection of trade secrets). Similarly, the public interest calls for enforcement of valid non-competition agreements. *See Pro Edge*, 374 F. Supp. 2d at 752.

Thus, all of the *Dataphase* factors favor issuance of a temporary restraining order in this case.

Rule 65(c) provides, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Prudential did not make any argument in its moving papers concerning the amount of an appropriate bond. However, the court finds that, under the circumstances, considering the effect of the temporary restraining order on Inlay, which is narrow and temporary, as well as the maximum possible costs and damages that he is likely to sustain, a bond in the amount of $10,000 is sufficient. Also in light of the circumstances, the court will direct that the temporary restraining order issue and have full force and effect immediately, provided that Prudential posts the required bond within forty-eight hours.

14

Finally, the court finds that Prudential's request for expedited discovery, in support of which Prudential offered no argument in its moving papers, must be denied. The court finds that *any* discovery in these proceedings would exceed the narrow scope of the authorization for "temporary injunctive orders" by this court in FINRA Arbitration Rule 13804.

THEREFORE, Prudential's July 26, 2010, Motion For Temporary Restraining Order And Preliminary Injunction And Motion For Expedited Discovery (Motion For TRO) (docket no. 4), as amended (docket no. 18) is **granted** to the extent that the court will issue a Temporary Restraining Order, but **denied** as to Prudential's request for a preliminary injunction and request for expedited discovery.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2010.

Mark W. Bennett

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA